IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ERIC ENO, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | |
| | ) | |
| MAPLEBEAR, INC. | ) | |
| d/b/a INSTACART, | ) | JURY DEMAND |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

1.     **NOW COMES** Plaintiff Eric Eno (hereinafter "Plaintiff") and files this Complaint against Defendant Maplebear, Inc. d/b/a Instacart (hereinafter "Defendant") for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et. seq*. (hereinafter "FMLA") and the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et. seq*. (hereinafter "ADA"). The Plaintiff states more fully as follows:

## Introduction

2.     Plaintiff worked for Defendant within two (2) years preceding the filing of this Complaint. Plaintiff's employment was terminated after he took medical leave, in violation of the FMLA's prohibition on retaliatory

00426339

discharge, and in violation of the ADA's prohibition on discrimination based upon a disability/perceived disability. Plaintiff seeks: (1) back wages and lost benefits from the date of his termination to date of judgment; (2) an equal amount in liquidated damages; (3) reinstatement to his former position (including equal salary and benefits); (4) compensatory and punitive damages; and (5) his attorneys' fees and costs of litigation.

## Jurisdiction

3.      Plaintiff brings this action under the Family and Medical Leave Act, 29 U.S.C. §2601 *et. seq.*, and under Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et. seq.* This Court has original jurisdiction pursuant to 29 U.S.C. §2617(a)(2), 42 U.S.C. §12117, 42 U.S.C. §2000e-5(f), and 28 U.S.C. §1331 and §1337.

## Venue

4.      Defendant Maplebear, Inc., more popularly known as Instacart, is a nationwide grocery delivery service based in San Francisco, California. Plaintiff worked in Defendant's Atlanta office, located at Ponce City Market, 675 Ponce de Leon Avenue, N.E., Atlanta, Georgia, 30308. Venue for this action properly lies in the Northern District of Georgia, Atlanta

Division, pursuant to 28. U.S.C. §1391(b) and §1391(c)(2), and Local Rule 3.1, N.D. Ga.

## Facts

5.    Plaintiff was hired by Defendant on February 25, 2019, as a Customer Care Manager and was terminated effective January 31, 2021.

6.    Plaintiff worked at Defendant's Atlanta offices located at Ponce City Market.

7.    During Plaintiff's employment, Defendant employed fifty (50) or more people at its Atlanta office.

8.    Plaintiff was initially hired as a Community Support Operations Manager.

9.    From his initial hire to approximately February 2020 – the start of the Covid pandemic – Plaintiff worked approximately fifty (50) to fifty-five (55) hours per week.

10.   When the Covid pandemic began, Plaintiff's average work hours increased to approximately fifty-five (55) to sixty-five (65) hours per week, from approximately February 2020 through June 2020.

11.   In late summer of 2020 and at the suggestion of his therapist, Plaintiff began to reduce his weekly work hours to approximately forty-five (45) hours per week.

12.   As early as March of 2019, Plaintiff learned that Defendant had a reputation and culture of discouraging employees from taking medical leave – particularly for mental health issues – and terminating employees who took such leave.

13.   In April 2020, Plaintiff's job position was changed to Care Social Media Manager and he began to report to Donna Nall, Senior Manager of Content Strategy.

14.   Nall became aware that an employee under Plaintiff's supervision was still on extended family/medical leave (due initially to pregnancy and then the loss of a child). Nall expressed her unhappiness that this employee had been on extended leave and told Plaintiff to have her terminated. Plaintiff spoke with corporate human resources about terminating the employee but was told that she was still on protected leave and could not be terminated without violating the law.

15.   On July 14, 2020, Plaintiff communicated with Max Mullen, co-founder of Defendant, to express his concerns about his department –

issues of retaliation, discriminatory comments, and a hostile work environment. Mr. Mullen told Plaintiff that he would look into Plaintiff's concerns, but Mr. Mullen never contacted Plaintiff again.

16.     Following up on a request by Mr. Mullen, Plaintiff sent Mullen a list of employees in the Care Organization who had witnessed the behaviors and actions described by Plaintiff to Mullen. Again, there was not further response from Mr. Mullen.

17.     On July 22, 2020, Plaintiff anonymously reported these same concerns – acts of retaliation and the hostile work environment – on Defendant's internal, anonymous portal "All Voices." When asked to self-identify, Plaintiff declined, and the inquiry was closed out.

18.     In January 2020, Plaintiff began seeing a therapist for stress and anxiety.

19.     Nall was aware that Plaintiff began seeing a therapist in the Spring of 2020 through casual conversation.

20.     In August 2020, Plaintiff's therapist suggested that he begin taking medication for his anxiety attacks.

21.     In August 2020, Plaintiff had a standard performance review and received a positive evaluation.

22.    Unbeknownst to Plaintiff, Nall began cataloging what she termed "disconcerting behavior issues" as early as September 14, 2020.  See Exhibit 1, attached hereto.

23.    On September 16, 2020, Plaintiff met with Nall and told her about the work-related stress he was under, and the impact that stress was having on him. Nall directed Plaintiff to take a week off work and told him that he would not be able to take any additional leave for the remainder of the year due to the pending implementation of a new social media platform.

24.    By September 2020, Plaintiff was experiencing regular panic attacks, insomnia, and severe depression, and sought psychiatric treatment.

25.    On October 9, 2020, unbeknownst to Plaintiff, Nall wrote a memo recommending that one of two (2) manager positions in the Care Social Media Team be eliminated. (Plaintiff was one (1) of the two (2) managers.)  Nall wrote positively about one manager – Alana Brown - and negatively about Plaintiff. See Exhibit 2, attached hereto, memo from Donna Nall, Oct. 9, 2020.

26.    On October 14, 2020, Plaintiff had his first appointment with his psychiatrist, who diagnosed him with major depression and anxiety, and prescribed Plaintiff medication. Plaintiff's physician recommended an immediate leave of absence until his conditions improved.

27.    On October 14, 2020, Plaintiff contacted The Larkin Company, the benefits administration company which administers various employee benefit programs for Defendant and requested FMLA medical leave and short-term disability leave.

28.    Plaintiff spoke with Cali Ness of the The Larkin Company about his physician's authorization for medical leave and Plaintiff's concern that he would be terminated if he sought FMLA leave.  Ness assured Plaintiff that his employment would not be terminated while on FMLA leave nor would he be retaliated against.

29.    The Larkin Company told Plaintiff that his request for FMLA leave, and short-term disability was granted. See Exhibit 3, letter from Larkin Company to Plaintiff, dated October 14, 2020.

30.    Plaintiff continued to see his physician periodically throughout his medical leave.

31.    The Larkin Company extended Plaintiff's leave four (4) times during this period. See attached Exhibits 4-6; Exhibit 4: letter dated October 19, 2020; Exhibit 5: letter dated October 30, 202; and Exhibit 6: letter dated December 4, 2020.

32.    The Larkin Company informed Plaintiff that his FMLA leave would be exhausted as of January 7, 2021, and that his short-term disability leave would expire on January 12, 2021. See Exhibit 7, letter dated January 20, 2021.

33.    On January 8, 2021, Plaintiff received a package from Nall on behalf of Defendant. In this package, Nall included a letter, dated January 7, 2021, allegedly emailed to Plaintiff the day before (January 7) that referenced a memorandum by Mark Killick, Vice President of Care, outlining business and organizational changes in the Care Organization (a department within Defendant). Plaintiff had not received this e-mail.  In her message to Plaintiff, Nall claimed that this reorganization – as allegedly set forth in the Killick memo – resulted in the elimination of Plaintiff's position. The package from Nall did not include the referenced memo from Killick but did include a Separation

Agreement. See Exhibit 8, letter from Nall to Plaintiff, dated January 7, 2021, and Exhibit 9, memo from Mark Killick dated January 9, 2021.

34.    On January 11, 2021, Plaintiff spoke with Kiha Jones, Human Resources Director, who told Plaintiff that his position had been eliminated in the department's reorganization and that his official termination date was January 31, 2021. Jones emailed Plaintiff a copy of the Killick memo, which was dated January 9th, one day after the date of Nall's letter informing Plaintiff of his termination and two days after Nall had claimed that Plaintiff had been advised of the reorganization.

## COUNT I:

### Interference with Plaintiff's Job Restoration Rights under the FMLA

35.    Plaintiff restates and realleges paragraphs five (5) through thirty-four (34).

36.    During the relevant time period, the Defendant was an "employer" as defined in 29 U.S.C. §2611(4).

37.    Plaintiff was an "eligible employee," as defined in 29 U.S.C. §2611(2), because: (1) he had been employed for more than one (1) year preceding his October 2020 leave request; and (2) had worked in excess

of 1,250 hours during the twelve-month period preceding his October 2020 leave request

38.    Plaintiff's medical condition and continuing treatment from early Spring 2020 through January 2021 constituted a "serious health condition" as defined in 29 U.S.C. §2611(11).

39.    Defendant decision to terminate Plaintiff's employment while he was on FMLA leave constitutes interference with Plaintiff's rights under the FMLA. *See* 29 U.S.C. §2614(a)(1) and §2615(a), and 29 C.F.R. §825.214, §825.215, and §825.220.

40.    Plaintiff is entitled to recover his lost wages, liquidated damages in an equal amount, his reasonable attorneys' fees and costs, and to be reinstated to the same or equivalent position. 29 U.S.C. §2617(a)(1), 29 U.S.C. §2617(a)(3) and 29 C.F.R. §825.400(c).

## COUNT II:

## Retaliation Claim under the FMLA – Defendant's Termination of Plaintiff Constitutes Unlawful Retaliation

41.    Plaintiff restates and realleges paragraphs five (5) through thirty-four (34).

42.    During the relevant time period, the Defendant was an "employer" as defined in 29 U.S.C. §2611(4).

43.     Plaintiff was an "eligible employee," as defined in 29 U.S.C. §2611(2), because: (1) he had been employed for more than one (1) year preceding his October 2020 leave request; and (2) had worked in excess of 1,250 hours during the twelve-month period preceding his October 2020 leave request

44.     Plaintiff's medical condition and continuing treatment from early Spring 2020 through January 2021 constituted a "serious health condition" as defined in 29 U.S.C. §2611(11).

45.     Defendant's decision to terminate Plaintiff's employment following his FMLA leave constitutes impermissible retaliation in violation of 29 U.S.C. §2615(a)(2).

46.     Plaintiff is entitled to recover his lost wages, liquidated damages in an equal amount, his reasonable attorneys' fees and costs, and to be reinstated to the same or equivalent position. 29 U.S.C. §2617(a)(1)(A), 29 U.S.C. §2617(a)(3) and 29 C.F.R. §825.400(c).

## COUNT III:

## Interference with Plaintiff's FMLA Rights – Failure to Provide FMLA Notices

47.     Plaintiff restates and realleges paragraphs five (5) through thirty-four (34).

48.     During the relevant time period, the Defendant was an "employer" as defined in 29 U.S.C. §2611(4).

49.     Plaintiff was an "eligible employee," as defined in 29 U.S.C. §2611(2), because: (1) he had been employed for more than one (1) year preceding his October 2020 leave request; and (2) had worked in excess of 1,250 hours during the twelve-month period preceding his October 2020 leave request

50.     Plaintiff's medical condition and continuing treatment from early Spring 2020 through January 2021 constituted a "serious health condition" as defined in 29 U.S.C. §2611(11).

51.     The Larkin Company, acting as an agent of Defendant, provided Plaintiff with various forms which purport to satisfy the notice requirements under the FMLA. See Exhibits 1-5.

52.     Under regulations issued by the U.S. Department of Labor, employers must require four (4) basic notices. First, the employer must provide the "general notice" described in 29 C.F.R. §825.300(a). Second, once an employee requests possible FMLA-qualifying leave, or gives an employer reason to suspect a leave request may qualify, then the employer must provide the employee with an "eligibility notice." *See* 29

C.F.R. §825.300(b). Third, along with the "eligibility notice," and in certain other situations, the employer must provide a written "rights & responsibilities notice." *See* 29 C.F.R. §825.300(c). When an employer requires medical certification, that requirement, along with others, must be included in the written "rights & responsibilities notice." *See* 29 C.F.R. §825.300(c)(ii), 29 C.F.R. 825.300(c)(2), 29 C.F.R. §825.300(c)(3) and 29 C.F.R. §825.300(c)(4). And fourth, the employer must provide the employee with a written "designation notice" stating that the requested leave does or does not qualify as FMLA leave. *See* 29 C.F.R. §825.300(d). If an employer requires a fitness-for-duty certification, that requirement must be conveyed in writing in the "designation notice." 29 C.F.R. §825.300(d)(3).

53.    The forms provided by The Larkin Company do not fully meet these requirements.

54.    Failure to follow the notice requirements constitutes an interference with and restraint of the Plaintiff's rights under the FMLA. 29 C.F.R. §825.300(e) and 29 U.S.C. §2615(a)(1).

55.    Plaintiff is entitled to recover his lost wages, liquidated damages in an equal amount, his reasonable attorneys' fees and costs, and to be

reinstated to the same or equivalent position. 29 U.S.C. §2617(a)(1)(A), 29 U.S.C. §2617(a)(3) and 29 C.F.R. §825.400(c).

## COUNT IV:

## Illegal Termination under the ADA

56.     Plaintiff restates and realleges paragraphs five (5) through thirty-four (34).

57.     On April 30, 2021, Plaintiff timely filed a Charge of Discrimination under the ADA with the U.S. Equal Employment Opportunity Commission.

58.     On May 25, 2021, the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue to Plaintiff. He now timely files this Complaint.

59.     Defendant, as a corporation with more than fifteen (15) employees and being engaged in an industry affecting commerce, is an "employer." 42 U.S.C. §12111(5).

60.     Plaintiff's diagnosis of major depressive disorder and anxiety disorder, the treatment thereof, and the effects on his major life activities constitute a "disability" under 42 U.S.C. §12102(1). Alternatively,

Defendant regarded Plaintiff's illness as a "disability," 42 U.S.C. §12102(3).

61.   Title I of the Americans with Disabilities Act prohibits covered employers from discriminating against a qualified individual on the basis of disability with regard to job application procedures, hiring, advancement or discharge, employee compensation, job training, and other terms, conditions and privileges of employment. 42 U.S.C. §12112(a); 29 C.F.R. §1630.4.

62.   Defendant discriminated against Plaintiff on the basis of his actual or perceived disability by terminating him after taking FMLA leave. 42 U.S.C. §12102, 42 U.S.C. §12111, 42 U.S.C. §12112, 29 C.F.R. §1630.2, and 29 C.F.R. §1630.4.

63.   Plaintiff is entitled to recover his lost wages, lost employee benefits, compensatory damages, punitive damages and his reasonable attorneys' fees and costs. 42 U.S.C. §12117(a), 42 U.S.C. §2000e-5(f) and -5(k), and 42 U.S.C. §1981a.

## COUNT V

## Illegal Retaliation under the ADA

64. Plaintiff restates and realleges paragraphs five (5) through thirty-four (34).

65. On April 30, 2021, Plaintiff timely filed a Charge of Discrimination under the ADA with the U.S. Equal Employment Opportunity Commission.

66. On May 25, 2021, the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue to Plaintiff. He now timely files this Complaint.

67. Defendant, as a corporation with more than fifteen (15) employees and being engaged in an industry affecting commerce, is an "employer." 42 U.S.C. §12111(5).

68. Plaintiff's diagnosis of major depressive disorder and anxiety disorder, the treatment thereof, and the effects on his major life activities constitute a "disability" under 42 U.S.C. §12102(1). Alternatively, Defendant regarded Plaintiff's illness as a "disability," 42 U.S.C. §12102(3).

69.    Title I of the Americans with Disabilities Act prohibits covered employers from discriminating against a qualified individual on the basis of disability with regard to job application procedures, hiring, advancement or discharge, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. §12112(a); 29 C.F.R. §1630.4.

70.    Defendant illegally retaliated against Plaintiff on the basis of his actual or perceived disability by terminating him after taking FMLA leave. 42 U.S.C. §12102, 42 U.S.C. §12111, 42 U.S.C. §12112, 29 C.F.R. §1630.2, and 29 C.F.R. §1630.4.

71.    Plaintiff is entitled to recover his lost wages, lost employee benefits, compensatory damages, punitive damages and his reasonable attorneys' fees and costs. 42 U.S.C. §12117(a), 42 U.S.C. §2000e-5(f) and -5(k), and 42 U.S.C. §1981a.

## **Prayer for Relief**

72.    Based upon the forgoing paragraphs, Plaintiff respectfully asks this Court to find and order the following:

    A.    That the Court grant Plaintiff a trial by jury as to all triable issues of fact;

B.    That the Court declare that, pursuant to 29 U.S.C. §2617(a)(1), Defendant violated the Family and Medical Leave Act by (1) failing to provide the required Notices under the FMLA; (2) by interfering with Plaintiff's job restoration rights under the FMLA; and (3) by terminating Plaintiff in retaliation for exercising his rights under the FMLA;

C.    That, pursuant to 29 U.S.C. §2617(a)(1)(A)(i), Defendant be ordered to pay Plaintiff back wages and lost benefits from his termination date to the date of judgment;

D.    That, pursuant to 29 U.S.C. §2617(a)(1)(A)(iii), Defendant be ordered to pay Plaintiff liquidated damages in an amount equal to his back wages, and lost benefits;

E.    That, pursuant to 29 U.S.C. §2617(a)(1)(B), Defendant be ordered to reinstate Plaintiff to his last-held position (or equivalent) with the same salary and benefits;

F.    That, pursuant to 29 U.S.C. §2617(a)(3), Defendant be ordered to pay Plaintiff's reasonable attorneys' fees and costs of this action;

G.   That the Court declare that pursuant to 42 U.S.C. §12117(a), 42 U.S.C. §2000e-5(f) and -5(k), Defendant violated the Americans with Disabilities Act by discriminating against Plaintiff upon his actual or perceived disability;

H.   That the Court declare that, pursuant to 42 U.S.C. §12117(a), 42 U.S.C. §2000e-5(f) and -5(k), Defendant violated the Americans with Disabilities Act by retaliating against Plaintiff based upon his actual or perceived disability;

I.   That, pursuant to 42 U.S.C. §12117(a), 42 U.S.C. §2000e-5(f) and -5(k), and 42 U.S.C. §1981a, Defendant be ordered to pay Plaintiff back wages and lost benefits from his termination date to the date of judgment, compensatory damages, punitive damages and reasonable attorneys' fees and costs; and,

J.   For such other and further relief as the Court finds just and appropriate.

Respectfully submitted this eighteenth (18th) day of August 2021.

/s/ J. Larry Stine
J. Larry Stine, Esq.
Georgia Bar No. 682555
Elizabeth K. Dorminey, Esq.

00426339                          19

Georgia Bar No. 225935

WIMBERLY, LAWSON, STECKEL,
 SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 365-0900
Fax: (404) 261-3707
Emails: jls@wimlaw.com
        ekd@wimlaw.com

*/s/Hipolito M. Goico*
Hipolito M. Goico, Esq.
Georgia Bar No. 299195
Albert J. Bolet, III
Georgia Bar No.: 065785

GOICO & BOLET, P.C.
2021 North Druid Hills Road, N.E.
Suite 200
Atlanta, Georgia 30329
Phone: (404) 320-3456
Fax: (404) 320-3026
Emails: hgoico@goicobolet.com
        abolet@goicobolet.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing Memorandum has been prepared using Century Schoolbook 14-point font, is double-spaced, and otherwise complies with the font and point selections approved by the Court under Local Rule 5.1(B).

<div align="right">

*/s/ J. Larry Stine*
</div>

WIMBERLY, LAWSON, STECKEL,
 SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 365-0900